# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

DUANE WOOD,

    Plaintiff

v.

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, *et al.*,

    Defendants

Civil Action No. 16-2139 (CKK)

## MEMORANDUM OPINION
(June 15, 2017)

Plaintiff, proceeding *pro se*, brings this action against Defendants American Federation of Government Employees ("AFGE"), J. David Cox and Nathaniel Nelson. Although Plaintiff's complaint is not a model of clarity, the gravamen of his claims appears to be that he was defamed when a fellow union member sent various e-mails alleging that Plaintiff committed certain financial wrongdoing in his role as Executive Vice President of AFGE Local 2798. Before the Court is Defendants' [5] Motion to Dismiss. Defendants argue that this case is preempted in its entirety by the Civil Service Reform Act ("CSRA"). Alternatively, Defendants argue that Plaintiff has failed to state a claim under the Labor-Management Reporting and Disclosure Act ("LMRDA"), or for defamation. Upon consideration of the pleadings,[1] the relevant legal authorities, and the record for purposes of this motion, the Court GRANTS-IN-PART and DENIES-IN-PART Defendants' Motion.

---

[1] The Court's consideration has focused on the following documents:
- Defs.' Mot. to Dismiss ("Defs.' Mot."), ECF No. 5;
- Pl.'s Mem. in Opp'n to Mot. to Dismiss ("Pl.'s Opp'n"), ECF No. 7; and
- Defs.' Reply, ECF No. 8.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

1

# I. BACKGROUND

For the purposes of this motion, the Court accepts as true the well-pleaded allegations in Plaintiff's complaint. The Court does "not accept as true, however, the plaintiff's legal conclusions or inferences that are unsupported by the facts alleged." *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 315 (D.C. Cir. 2014).

Plaintiff Duane Wood was formerly employed at the United States Department of Veteran Affairs and was the Executive Vice President of AFGE Local 2798. Compl., ECF No. 1-1, at 1. Plaintiff alleges that shortly after he was elected to this position, he and the other members of Local 2798's Executive Board began making numerous attempts to contact Defendant Cox, the National President of AFGE, about certain concerns they had about Defendant Nelson, the National Representative for Local 2798, regarding financial mismanagement of union affairs. *Id.* at 2. Cox allegedly ignored these contacts, and therefore Plaintiff and other Local 2798 members brought their concerns directly to the United States Department of Labor. *Id.*

In response, AFGE District 14 National Vice President Dwight Bowman agreed to meet with Plaintiff and the Executive Board to discuss their concerns. *Id.* At that meeting, Bowman allegedly confirmed that the current "administration" was not responsible for the "significant missing money," and also agreed that Nelson would be replaced as the representative for Local 2798. *Id.* However, Bowman passed away before this could occur. *Id.* After Bowman's death, Nelson recommended that Local 2798 "be put in Trusteeship bringing CHARGES alleging illegal activities, theft, mismanagement of funds and grave misconduct by Wood & the other Local 2798 Executive Board members." *Id.* Nelson also "relieve[d]" Plaintiff of his position as

Executive Vice President of AFGE Local 2798 in a public manner that Plaintiff alleges was humiliating. *Id.* at 3.

A hearing was then conducted by the AFGE into Nelson's claims against Plaintiff and the other members of the Executive Board. *Id.* After the hearing concluded but before Plaintiff had been informed of the results, Nelson allegedly engaged in a "smear campaign" against Plaintiff, sending out "mass emails" accusing Plaintiff of "everything from stealing computers, hacking government accounts [and] shredding pertinent documents." *Id.*

Nonetheless, the AFGE panel investigating the charges against Plaintiff eventually ruled in his favor, and found that his position, as well as the positions of the other implicated executive board members, should be reinstated and that Local 2798 should be removed from trusteeship. *Id.* However, only months later, Plaintiff received new charges against him, this time alleging that "he is in effect committing treason and attempting to 'decertify' the union." *Id.* Following these new charges, Nelson again allegedly "smear[ed]" Plaintiff by sending mass emails accusing Plaintiff of, among other things, taking unauthorized bonuses and destroying union files. *Id.* at 4. AFGE eventually "ruled that Wood cannot be a union member for 10 years & Wood may never hold office again." *Id.*

Plaintiff did not expressly state any particular cause of action in his complaint, but sought monetary damages for "tainted image, emptied ambition, sleepless nights, and hours of legal consultation." *Id.* Plaintiff filed this lawsuit in the Superior Court for the District of Columbia and Defendants removed it to this Court. Notice of Removal, ECF No. 1. Defendants subsequently filed the pending motion to dismiss which has been fully briefed and is ripe for resolution.

3

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(1)

When a motion to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(1) is filed, a federal court is required to ensure that it has "the 'statutory or constitutional power to adjudicate [the] case[.]'" *Morrow v. United States*, 723 F. Supp. 2d 71, 77 (D.D.C. 2010) (emphasis omitted) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998)). "Federal courts are courts of limited jurisdiction" and can adjudicate only those cases or controversies entrusted to them by the Constitution or an Act of Congress. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). In determining whether there is jurisdiction, the Court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (citations omitted). "Although a court must accept as true all the factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1)," the factual allegations in the complaint "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163, 170 (D.D.C. 2007) (citations omitted).

### B. Federal Rule of Civil Procedure 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Rather, a complaint must contain sufficient factual

allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## III. DISCUSSION

The Court will first address Defendants' argument that Plaintiff's complaint is completely preempted by the CSRA. Because the Court determines that Plaintiff's defamation claim is not preempted, it will then go on to consider Defendants' argument that Plaintiff's defamation claim should be dismissed for failure to state a claim. Finally, the Court will address Defendants' arguments about the propriety of retaining the individual Defendants in this suit.

### A. CSRA Preemption

Defendants primarily argue that this case must be dismissed because it is preempted by the CSRA. In determining whether Plaintiff's claims are preempted, the Court begins by establishing what is *not* at issue. "The CSRA 'regulates virtually every aspect of federal employment and prescribes in great detail the protections and remedies' applicable to adverse personnel actions, 'including the availability of administrative and judicial review.'" *Mahoney v. Donovan*, 824 F. Supp. 2d 49, 63 (D.D.C. 2011) (quoting *Nyunt v. Chairman, Broad. Bd. of Governors,* 589 F.3d 445, 448 (D.C. Cir. 2009) (internal quotations omitted). However, Defendants have not argued that this case arises from any adverse personnel action taken against the Plaintiff, and the Court cannot discern any such personnel action from the pleadings.[2]

---

[2] Cases involving personnel actions generally "concern disputes arising from the employment relationship wherein a government employer or supervisor takes an action against a government employee that allegedly violated the merit principles outlined in Title II of the CSRA." *Gutierrez v. Flores*, 543 F.3d 248, 253 (5th Cir. 2008).

Accordingly, although "[t]he CSRA provides a comprehensive scheme to administer adverse personnel actions against federal employees," *Graham v. Ashcroft*, 358 F.3d 931, 933 (D.C. Cir. 2004), and therefore "preempts judicial review of prohibited personnel actions," *Doe P v. Goss*, No. CIVA 04-2122 GK, 2007 WL 106523, at *8 (D.D.C. Jan. 12, 2007), this type of preemption is not at issue in this case.

However, "[i]n addition to providing a means of evaluating personnel actions, the CSRA also sets forth guidelines for employee-management relations in Title VII of the CSRA, which governs labor organizations and collective bargaining among federal employees." *Murphree v. Am. Fed'n of Gov't Employees, AFL-CIO*, 850 F. Supp. 2d 1256, 1259 (N.D. Ala. 2012). Accordingly, complaints that a labor organization has committed an "unfair labor practice" are also preempted by the CSRA, and must be filed with the Federal Labor Relations Authority ("FLRA"). *See Karahalios v. Nat'l Fed'n of Fed. Employees, Local 1263*, 489 U.S. 527, 532-33 (1989); *see also Steadman v. Governor, U.S. Soldiers' & Airmen's Home*, 918 F.2d 963, 966 (D.C. Cir. 1990) (a district court is barred "from entertaining an unfair labor practice claim, over which the FLRA has exclusive jurisdiction.").

This is the type of preemption Defendants contend precludes Plaintiff's claims in this case. In their Motion to Dismiss, Defendants argue that "it is clear that the gravamen of Plaintiff's complaint is that the union committed an unfair labor practice when it allegedly interfered and/or attempted to restraint Plaintiff's rights as secured under the Civil Service Reform Act ('CSRA')." Defs.' Mot. at 2. Defendants' argument has some intuitive appeal, given that the *pro se* complaint in this case does seem to focus on Defendant's rights as a union member and argue that those rights were improperly interfered with. It is an unfair labor practice for a labor organization to, among other things, "interfere with, restrain, or coerce any

employee in the exercise by the employee of any right under" the chapter of the CSRA related to union and labor rights, or "to otherwise fail or refuse to comply with any provision of this chapter." 5 U.S.C. § 7116(b)(1), (8). To the extent Plaintiff's complaint, which is somewhat unclear, attempts to allege any unfair labor practices, it is dismissed.

However, Plaintiff has clarified in his opposition to Defendants' motion to dismiss that he is asserting a defamation claim that the Court does not interpret as being a challenge to an unfair labor practice. In his opposition, Plaintiff states that he is "asserting a tort claim of defamation," that Defendants have engaged in a "pattern of intentional harm, harassment, slander and defamation," and "seeks a remedy for harassment, slander and defamation of character." Pl.'s Opp'n at 1, 2, 6. Plaintiff appears to concede that he has alleged some "unfair labor practices," and that the CSRA "provides the exclusive remedy for federal employees," but argues that this is not the case "with respect to defamation related disputes." *Id*. at 6. Because Plaintiff proceeds in this matter *pro se*, the Court must consider not only the facts alleged in Plaintiff's Complaint, but also the facts alleged in Plaintiff's Opposition to Defendant's Motion to Dismiss. *See Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015) ("a district court errs in failing to consider a *pro se* litigant's complaint 'in light of' all filings, including filings responsive to a motion to dismiss") (quoting *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999)); *Fillmore v. AT & T Mobility Servs. LLC*, 140 F. Supp. 3d 1, 2 (D.D.C. 2015) ("the Court, as it must in a case brought by a *pro se* plaintiff, considers the facts as alleged in both the Complaint and Plaintiff's Opposition to Defendant's Motion to Dismiss.").

It is true that, despite labelling his claim as one for "defamation," Plaintiff's complaint would be subject to preemption if in substance it challenged an unfair labor practice, because "[t]he CSRA preempts a state tort claim if the claim falls within the purview of the Act." *Greene*

7

*v. Am. Fed'n of Gov't Employees, AFL-CIO, Local 2607*, No. CIV.A. 05-0408 RMU, 2005 WL 3275903, at *3 (D.D.C. Sept. 7, 2005). However, Defendants have provided no persuasive argument or authority for the proposition that the particular defamation alleged in this case is an unfair labor practice that would fall within the purview of the CSRA, and the Court concludes that it is not.

The Court finds instructive the Fifth Circuit's opinion in the case *Gutierrez v. Flores*, 543 F.3d 248 (5th Cir. 2008). In *Gutierrez*, a former Vice President of AFGE brought suit against other members of the union alleging that statements they had made about his alleged misconduct in certain union activities were libelous. *Id.* at 249. An investigation had been conducted into alleged financial wrongdoing committed by the *Gutierrez* plaintiff in relation to his union responsibilities, but the government had declined to prosecute him. *Id.* at 249-50. Defendants—other union members who were upset with plaintiff's conduct—disseminated a letter and an e-mail which included statements that plaintiff had committed theft and embezzlement and had already been found "guilty." *Id.* at 250-51. Plaintiff alleged that these communications constituted libel. *Id.*

The *Gutierrez* court held that the CSRA did not preempt plaintiff's libel claim. *Id.* at 251-56. That court first reasoned that, like in this case, these communications were unrelated to any personnel action connected to plaintiff's government employment, and accordingly CSRA preemption of personnel action claims was not applicable. *Id.* at 253-54. Next, the Court acknowledged that lawsuits asserting that a union had violated its duty of fair representation were also preempted by the CSRA, *id.* at 254 (citing *Karahalios*, 489 U.S. at 532), but concluded that plaintiff had "*not* allege[d] that Appellees or the union committed an 'unfair labor practice,'" *id.* at 255. The Court reasoned that plaintiff was "not alleging that Appellees violated a duty

8

established under the CSRA" but instead that "Appellees' letter and e-mail were defamatory and intended to inflict emotional distress." *Id.* The Court noted that "[n]othing in the CSRA pertains to this specific scenario." *Id.*

This reasoning applies equally to the case before the Court. As stated above, Defendants have not argued that this case relates to any personnel action with respect to Plaintiff's government employment, and the Court can discern no such action underpinning Plaintiff's claims. Plaintiff is suing his union and other union members, but Plaintiff's defamation claim does not allege that his union breached their duty of fair representation, nor does it otherwise appear to implicate any unfair labor practices as that term is defined under the CSRA. The CSRA does not "preclude[ ] an employee from suing his union," under all circumstances. *Id.* at 254. It only precludes claims alleging that the union committed an "unfair labor practice." *Id.* Because that does not appear to be the case with respect to Plaintiff's defamation claim in particular, that claim will survive Defendants' motion to dismiss. *See also Murphree*, 850 F. Supp. 2d at 1267 (finding that CSRA did not preempt claim that "solely concern[ed] [a] defamatory article published in the union newsletter separate from" personnel action proceedings); *Gilding v. Carr*, 608 F. Supp. 2d 1147, 1153–54 (D. Ariz. 2009) (finding that CSRA did not preempt claim that union officers defamed plaintiff in their capacity as officers in a blog that was not "made within the confines of an administrative grievance.").

## B. Failure to State a Claim

Defendants also argue that Plaintiffs' claims, even if not preempted, should be dismissed for failure to state a claim. Although Plaintiff did not assert any causes of action in his complaint, Defendants presented arguments in their motion to dismiss assuming Plaintiff was attempting to assert claims either under the LMRDA or for defamation. As stated above, the

9

Court interprets Plaintiff's opposition as clarifying that his case is one for defamation, and has found that the complaint is not preempted by the CSRA based on that interpretation. Accordingly, the Court need not address Defendants' arguments regarding the Plaintiff's supposed LMRDA claims, because such claims are not at issue.

With respect to Plaintiff's defamation claim, Defendants posit two arguments for dismissal, neither of which are completely persuasive. First, Defendants argue that Plaintiff has failed to state a claim for defamation because he consented to the publication of the statements at issue. "Consent is an absolute defense to a claim of defamation." *Farrington v. Bureau of Nat. Affairs, Inc.*, 596 A.2d 58, 59 (D.C. 1991). "A person who consents to the publication of comments about himself has no cause of action for defamation." *Id.* "The publication of a defamatory statement is privileged if: (1) there was either express or implied consent to the publication; (2) the statements were relevant to the purpose for which consent was given; and, (3) the publication of those statements was limited to those with a legitimate interest in their content." *Id.*

Defendants contend that Plaintiff consented to the alleged defamation when he "voluntarily joined" AFGE, and agreed to be subject to AFGE's disciplinary procedures. Defs.' Mot. at 14. Defendants also argue that Defendant Nelson's emails "merely communicated" the results of Plaintiff's disciplinary hearing to "those with a legitimate interest in their content." *Id.* at 15. Plaintiff responds that he did not consent to the disciplinary hearing at issue, or the publication of the results of that hearing, and that Defendant Nelson sent the e-mail to individuals without a legitimate interest in their content. Pl.'s Opp'n at 7.

Little need be said of this argument at this stage of the case. Defendant cannot conclusively establish all of the elements of a consent defense based solely on Plaintiff's

10

pleadings, the content of which the Court accepts as true at this preliminary stage in the case. Instead, this defense presents factual disputes that will have to be resolved at a later stage. *See McFadden v. Washington Metro. Area Transit Auth.*, 949 F. Supp. 2d 214, 224-25 (D.D.C. 2013) (rejecting consent defense at motion to dismiss stage where "[t]he complaint alone does not reveal whether [the conditions of a consent defense] are met in this case" and holding that "[a]lthough the individual defendants may be able to satisfy all three elements of the defense at the summary judgment stage, the defense is prematurely raised in their Rule 12(b)(6) motion.").

Second, Defendants argue that Plaintiff's defamation claim must be dismissed because it is untimely. "'In the District of Columbia, the statute of limitations for defamation is one year.'" *Owens v. D.C.*, 631 F. Supp. 2d 48, 56 (D.D.C. 2009) (quoting *Wallace v. Skadden, Arps, Slate, Meagher & Flom*, 715 A.2d 873, 882 (D.C. 1998)). A court may grant a motion to dismiss on statute of limitations grounds "if 'no reasonable person could disagree on the date' on which the cause of action accrued." *Smith v. Brown & Williamson Tobacco Corp.*, 3 F. Supp. 2d 1473, 1475 (D.D.C. 1998) (quoting *Kuwait Airways Corp. v. American Security Bank, N.A.,* 890 F.2d 456, 463 n.11 (D.C.Cir.1989)).

Plaintiff filed his lawsuit on October 4, 2016. Notice of Removal at 1. It is undisputed that a number of the statements that could be interpreted as the basis for Plaintiff's defamation claim were made more than a year before this date. Compl. at 2-4 (listing a number of events by date from August 2012 to January 2014). To the extent Plaintiff's defamation claims are based on statements made before that time, they are untimely and will be dismissed. *See Jin v. Ministry of State Sec.*, 254 F. Supp. 2d 61, 69 (D.D.C. 2003) (granting motion to dismiss defamation claims where it was undisputed that allegedly defamatory material was published more than a

11

year before complaint was filed); *Mizell v. SunTrust Bank*, 26 F. Supp. 3d 80, 87 (D.D.C. 2014) (same).

However, as Defendants concede, Plaintiff's defamation claim is not entirely untimely. Plaintiff alleges that some of the defamatory statements at issue—including the alleged "smear" of Plaintiff in "[m]ass emails" in November of 2015—were made within a year of the filing of his complaint. Compl. at 4. To the extent Plaintiff's defamation claim is based on these statements, it will not be dismissed.

**C. Individual Defendants**

Finally, Defendants argue in a footnote that the individual Defendants should be dismissed from this case because the CSRA, 5 U.S.C. § 7116, precludes individual liability for any claims related to alleged union duties or obligations and limits liability exclusively to the labor organization. Defendant's argument is not persuasive with respect to Defendant Nelson because, as described above, the defamation he is alleged to have committed falls outside of the scope of unfair labor practices defined in 5 U.S.C. § 7116. The Court will dismiss Defendant Cox because there are no allegations tying him to the remaining defamation claim.

## IV. CONCLUSION

For the reasons set forth above, the Court will GRANT-IN-PART and DENY-IN-PART Defendants' Motion to Dismiss. The Court interprets Plaintiff's complaint, in conjunction with his opposition, as intending to assert a defamation claim. The Court finds that Plaintiff's defamation claim is not preempted by the CSRA because that claim is not based on any personnel action or unfair labor practice. To the extent Plaintiff intended to challenge any unfair labor practices, those claims will be dismissed as preempted. The Court also will dismiss Plaintiff's defamation claim in part, to the extent it is based on any statements prior to October 4,

2015, and will dismiss Defendant Cox. An appropriate Order accompanies this Memorandum Opinion.

Dated: June 15, 2017

                                                /s/
                                        COLLEEN KOLLAR-KOTELLY
                                        United States District Judge