# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DUANE WOOD,

       Plaintiff

    v.

AMERICAN FEDERATION OF
GOVERNMENT EMPLOYEES, *et al.*,

      Defendants

Civil Action No. 16-2139 (CKK)

## MEMORANDUM OPINION
(June 22, 2018)

Plaintiff, proceeding *pro se*, brings this action against Defendants American Federation

of Government Employees ("AFGE") and Nathaniel Nelson, an AFGE National Representative.

Plaintiff was formerly an AFGE union member and the Executive Vice President of AFGE Local

2798.  Plaintiff was removed from the union after an arbitrator sustained charges that Plaintiff

had wrongfully withdrawn money from Local 2798's bank accounts and encouraged members to

sign a "decertification petition."  In this lawsuit—as narrowed by the Court's earlier ruling on

Defendants' Motion to Dismiss—Plaintiff claims that Defendant Nelson defamed him in an e-

mail Mr. Nelson sent to a group of AFGE union members, officers and staff in November, 2015.

Before the Court is Defendants' [38] Motion for Summary Judgment.  Upon

consideration of the pleadings,[1] the relevant legal authorities, and the record for purposes of this

---

[1] The Court's consideration has focused on the following documents:
- Defs.' Mot. for Summary Judgment ("Defs.' Mot."), ECF No. 38;
- Pl.'s Resp. to Defs.' Mot. for Summary Judgment ("Pl.'s Resp."), ECF No. 40;
- Pl.'s Exhibits to Resp. to Defs.' Mot. for Summary Judgment, ECF No. 41 ("Pl.'s Exs."); and
- Defs.' Reply in Support of their Mot. for Summary Judgment, ECF No. 42.

motion, the Court GRANTS Defendants' Motion. There are no genuine disputes of material fact with respect to the truth of any statement in Mr. Nelson's e-mail, or with respect to the applicability of qualified privilege to that e-mail. Defendants are entitled to judgment as a matter of law. This case is DISMISSED.

# I. BACKGROUND

This case was narrowed considerably when the Court granted-in-part and denied-in-part Defendants' Motion to Dismiss. *See* June 15, 2017 Mem. Op. & Order, ECF Nos. 9, 10. Most importantly, this case no longer includes claims about supposed unfair labor practices. At this stage, all that remains in Plaintiff's lawsuit is a defamation claim based on a November 30, 2015 e-mail authored by Mr. Nelson. That e-mail contained the subject line "No Early Christmas Bonus for the Duane Wood Gang of crooks." Defs.' Mot., Ex. 4, at 0042. In its entirety, it reads as follows:

> During the Thanksgiving holidays, I received a flood of telephone calls from outraged members of local 2798 indicating that Duane Wood, Carroll Wallace, and the appointed Vice President had entered into a conspiracy to illegally appoint Duane Wood as a shop steward without notifying the Trustee or anyone else in District 14. The trustee was on vacation during this time and she left a clear message for all of her locals to call me in her absence for all union business. I did not receive a single phone call from the acting vice President or Carroll Wallace about permitting Duane Wood to perform shop steward duties. A federal arbitrator banned Duane Wood from holding any union office for 10 years and he must pay back the $1,600.00 before he can be a member. Members reported that Duane Wood was permitted to go in the union office (with his feet on top of a desk) and pass out union information to the members. Both Carroll Wallace and the acting Vice president knew Duane Wood was banned from union activities because they both participated with Duane Wood for the purpose of attempting to decertify local 2798. It was reported that

---

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

> Mr. Wood was permitted to destroy all of the negative information pertaining to him that were stored in the union office. He also used his IT ability to erase the arbitration decision from certain computers and block access to other computers. I just happen to have a copy of the arbitration decision that I had saved on a flash drive. I have forwarded a copy of this decision to Trustee Octavia Hall and NVP Bunn. I am recommending to the Trustee that charges be filed against Carroll Wallace and the Acting Vice President. Members further told me that Duane Wood and Carroll Wallace's primary goal was to raid the bank account of local 2798 because they knew local 2798 had a lot of money. There will not be an early Christmas Bonus for any of these gang members because they have proven that they can't be trusted with the check book or credit card. Please do not believe the rumors that Duane Wood has been officially appointed as a shop Steward because it is a lie. I thank everyone who reported this activity to me.

*Id.* This e-mail was sent to following individuals: Eric Bunn, Andrea Hall, Veronica Edmonds, Stanley Snow, and Octavia Hall. *Id.*; *see also* Defs.' Mot., Ex. 2 (April 20, 2017 Depo. of Nathaniel Nelson) ("Nelson Depo."), at 60:9-12. All of these individuals were either officers, employees or members of AFGE. *See* Nelson Depo. at 60:13-61:22; *see also* Defs.' Mot., Ex. 1 (April 20, 2017 Depo. of Duane Wood) ("Wood Depo."), at 22:4-26:14. One of the recipients, Octavia Hall, forwarded the e-mail to two other individuals, both of whom were also union representatives. *See* Defs.' Mot., Ex. 4, at 0043; Wood Depo. at 78.

Plaintiff claims that Mr. Nelson's e-mail defamed him. Defendants contend, among other things, that the statements in the e-mail are all true, substantially true or, at most, hyperbole. They also contend that the e-mail is protected by privilege because Mr. Nelson and the e-mail's recipients all shared a common interest in the supposed wrongdoing of individuals related to the union and that Plaintiff consented to being the subject of such e-mails by voluntarily joining AFGE and running for office. Defendants have moved for summary judgment, Plaintiff has filed a lengthy response, and Defendants have filed a reply. Defendants' motion is accordingly ripe for resolution.

## II. LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The mere existence of *some* factual dispute is insufficient on its own to bar summary judgment; the dispute must pertain to a "material" fact. *Id.* Accordingly, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Nor may summary judgment be avoided based on just any disagreement as to the relevant facts; the dispute must be "genuine," meaning that there must be sufficient admissible evidence for a reasonable trier of fact to find for the non-movant. *Id.*

In order to establish that a fact is or cannot be genuinely disputed, a party must (a) cite to specific parts of the record—including deposition testimony, documentary evidence, affidavits or declarations, or other competent evidence—in support of its position, or (b) demonstrate that the materials relied upon by the opposing party do not actually establish the absence or presence of a genuine dispute. Fed. R. Civ. P. 56(c)(1). Conclusory assertions offered without any factual basis in the record cannot create a genuine dispute sufficient to survive summary judgment. *See Ass'n of Flight Attendants-CWA, AFL-CIO v. Dep't of Transp.*, 564 F.3d 462, 465-66 (D.C. Cir. 2009). Moreover, where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the district court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e).

When faced with a motion for summary judgment, the district court may not make credibility determinations or weigh the evidence; instead, the evidence must be analyzed in the light most favorable to the non-movant, with all justifiable inferences drawn in its favor. *Liberty*

*Lobby*, 477 U.S. at 255. If material facts are genuinely in dispute, or undisputed facts are susceptible to divergent yet justifiable inferences, summary judgment is inappropriate. *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009). In the end, the district court's task is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251-52. In this regard, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted).

### III. DISCUSSION

The Court will grant Defendants' Motion for Summary Judgment. Under District of Columbia law, a plaintiff asserting defamation must establish four elements: "(1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm." *Oparaugo v. Watts*, 884 A.2d 63, 76 (D.C. 2005) (quoting *Crowley v. North Am. Telecomms. Ass'n,* 691 A.2d 1169, 1173 n.2 (D.C. 1997)). Based on the undisputed factual record, Defendants are entitled to judgment as a matter of law on at least two of these elements. First, there is no genuine dispute about the facts relevant to whether qualified privilege applies to Mr. Nelson's e-mail. The e-mail is privileged as a matter of law. Second, the Court has exhaustively reviewed the record in this case and concludes that there are no

genuine disputes of fact relevant to the truth or falsity of the statements in Mr. Nelson's e-mail. The only evidence presented indicates that they were all true, substantially true or, at most, hyperbole.

Plaintiff's Response to Defendants' Motion for Summary Judgment raises numerous irrelevant issues, quibbles over inconsequential perceived discrepancies, and makes conclusory allegations without basis in the evidentiary record.[2]  Although such allegations may have been sufficient at the pleading stage, at the summary judgment stage Plaintiff was required to present record evidence in support of his allegations.  *See Montgomery v. Risen*, 197 F. Supp. 3d 219, 262 (D.D.C. 2016), *aff'd,* 875 F.3d 709 (D.C. Cir. 2017) ("conclusory statements unaccompanied by supporting facts in the record are insufficient to defeat a motion for summary judgment."); *see also* Nov. 21, 2017 Order, ECF No. 39 (warning Plaintiff about his evidentiary burden when opposing Defendants' summary judgment motion).  He has not done so.

## A. Qualified Privilege

Plaintiff's defamation claim cannot survive the summary judgment stage because, based on the undisputed record, Mr. Nelson's e-mail is protected by qualified privileged.  First, the e-

---

[2] One of Plaintiff's recurring assertions is that "Defendants' 'Evidence' Allegedly Supporting its Filing Comprises Irrelevant, Inadmissible, and Incompetent Evidence."  Pl.'s Resp. at 17.  This is not persuasive.  First, to the extent that this argument is based on Plaintiff's suggestion that the Court's earlier Memorandum Opinion and Order granting-in-part and denying-in-part Defendants' Motion to Dismiss somehow limited the evidence Defendants could rely on at the summary judgment stage, that suggestion is wrong.  The Court's June 15, 2017 Memorandum Opinion and Order dismissed certain aspects of Plaintiff's claims—it had nothing to do with what evidence Defendants could rely on to defend themselves from the claims that remained. Second, with respect to Plaintiff's generalized arguments about "admissibility," the Court simply notes that summary judgment evidence need not be "in a *form* that would be admissible at trial," so long as it is "capable of being converted into admissible evidence."  *Glekien v. Democratic Cong. Campaign Comm., Inc.*, 199 F.3d 1365, 1369 (D.C. Cir. 2000) (emphasis in original).  The Court has not relied on any evidence presented by Defendants that would not have been capable of being converted into admissible evidence at a trial, if that had been necessary.

mail is protected by the qualified common interest privilege. "A statement is protected by the common interest privilege if it is '(1) made in good faith, (2) on a subject in which the party communicating has an interest, or in reference to which he has or honestly believes he has a duty (3) to a person who has such a corresponding interest or duty.'" *Payne v. Clark*, 25 A.3d 918, 925 (D.C. 2011) (quoting *Moss v. Stockard*, 580 A.2d 1011, 1024 (D.C. 1990)). "Whether a statement is privileged is a question of law." *Id.* "Where the court determines that the common interest privilege is applicable, 'the defendant will be presumed to have been actuated by pure motives in its publication [, and] [i]n order to rebut this presumption, express malice or malice in fact must be shown [by the plaintiff].'" *Id.* (quoting *Moss,* 580 A.2d at 1024 (internal citation omitted)).

Applying the common interest privilege, the D.C. Circuit has held that "there is no doubt that an officer of a union has a qualified privilege when he makes a statement informing the union of any supposed dereliction of duty of its officers." *Blake v. Trainer*, 148 F.2d 10, 12 (D.C. Cir. 1945). This principle applies here. Mr. Nelson is a National Representative of AFGE. His e-mail was sent to a small group of AFGE officers, members and staff, who all had a common interest in the proper functioning of AFGE Local 2798, violations of union rules, any supposed dereliction of duty by union officers, and anything else that materially affected their union.[3] The statements in Mr. Nelson's e-mail informed these officers, members and staff of the supposed union-related wrongdoing of Plaintiff, a former AFGE officer, and two other AFGE officers. The e-mail therefore concerned matters of legitimate interest to officers, members and staff of AFGE and was entitled to qualified privilege. *See Manbeck v. Ostrowski*, 384 F.2d 970,

---

[3] Although Plaintiff vaguely hints that he believes others may have seen the e-mail, there is no evidence in the record that the e-mail was distributed to anyone outside this group.

974 (D.C. Cir. 1967) (holding that qualified privilege principles were "rather obviously" applicable where union president accused the plaintiff of improprieties with respect to a fee the plaintiff had charged the union in front of an audience made up of union members with mutual interest in the subject); *Blodgett v. Univ. Club*, 930 A.2d 210, 223 (D.C. 2007) ("Because Blodgett voluntarily joined the Club and agreed to be bound by its by-laws and rules, his conduct within the Club became a matter of 'common interest' to the defendants").[4]

Second, the Court also finds that Mr. Nelson's e-mail was privileged on the grounds of consent. "The publication of a defamatory statement is privileged if: (1) there was either express or implied consent to the publication; (2) the statements were relevant to the purpose for which consent was given; and, (3) the publication of those statements was limited to those with a legitimate interest in their content." *Farrington v. Bureau of Nat. Affairs, Inc.*, 596 A.2d 58, 59 (D.C. 1991). Like the common interest privilege, the D.C. Circuit has applied the consent privilege to statements about conduct affecting the business of unions. *See Manbeck*, 384 F.2d at 973 ("plaintiff . . . 'by virtue of his membership in the union, and assuming to serve it, was subject to reasonable criticism in respect of the work performed for the union.'") (quoting *Caldwell v. Hayden*, 42 App. D.C. 166, 170 (D.C. Cir. 1914)).

Plaintiff voluntarily joined AFGE Local 2798 and then successfully ran for union office. *See* Wood Depo. at 12, 15-16, 19-20. By doing so, Plaintiff consented to the requirements that

---

[4] Plaintiff argues that at the time Mr. Nelson's e-mail was sent, Plaintiff was no longer an AFGE member. *See* Pl.'s Resp. at 19. This does not defeat the common interest privilege. Regardless of Plaintiff's membership status, the supposed conduct of Plaintiff discussed in the e-mail was clearly relevant to the union. The D.C. Circuit has held that the common interest privilege applied in the union context even where the subject of the allegedly defamatory statements was not a member or officer of the union. *See Manbeck*, 384 F.2d at 974 ("the fact that appellee was the union's attorney, rather than an officer or member, did not dissipate the immunity the privilege affords").

he uphold the union's constitution, and abide by its rules and disciplinary procedures. *Id.* This impliedly includes a consent to being the subject of internal union discussions criticizing his union-related activities. Mr. Nelson's e-mail falls within that category. The purpose of Mr. Nelson's e-mail, based on the content of the e-mail itself and Mr. Nelson's deposition testimony, was to protect the union by drawing attention to supposed violations of the union's constitution and rules. The e-mail was sent only to union officers, members and staff with a legitimate interest in such information. Plaintiff consented to being the subject of statements like these when he joined and then ran for elected office within AFGE.

In sum, the undisputed evidence shows that Mr. Nelson's e-mail was protected by qualified privileged on the grounds of the common interest privilege and consent. In order to overcome qualified privilege, Plaintiff would have had to establish "excessive publication or express malice." *Curry v. Giant Food Co.*, 522 A.2d 1283, 1294 (D.C. 1987). "The burden of proof at this stage . . . rests on the plaintiff" and that burden is "quite difficult for a plaintiff to overcome." *Washburn v. Lavoie*, 437 F.3d 84, 91 (D.C. Cir. 2006). Plaintiff has not satisfied this burden.

With respect to excessive publication, the undisputed record shows that the e-mail was published only to a small group of union officers, members and staff. It was not excessively published. Nor has Plaintiff shown malice. Malice, in the context of qualified privilege, "is the doing of an act without just cause or excuse, with such a conscious indifference or reckless disregard as to its results or effects upon the rights or feelings of others as to constitute ill will.'" *Payne*, 25 A.3d at 925 (quoting *Moss,* 580 A.2d at 1025). It is the equivalent of bad faith. *Id.* "'[T]he requirement of malice, for purposes of overcoming a common law qualified privilege, is [not] satisfied if the defendant has done no more than to fail to undertake a reasonable inquiry as

to the truth of the assertion prior to publication—conduct amounting to ordinary negligence.'" *Id.* (quoting *Moss*, 580 A.2d at 1025).

There is simply no evidence of malice in the record. Mr. Nelson testified that part of his job duties included assisting with drafting charges against union locals and officers. *See* Nelson Depo. at 69. He testified that he had been approached by several union officers and/or members complaining about Plaintiff, and that those complaints were what drove him to write the e-mail in question. Mr. Nelson explained that he wrote the e-mail to "protect those members, protect the AFGE District 14, Local 2798" and that the "e-mail was for informational purpose, to inform my supervisor Bunn and the officers who had a need to know what potentially could be going on." Nelson Depo. at 37:3-9. Mr. Nelson further explained that the e-mail "had only one purpose, and one purpose only; the preservation and integrity of our Constitution to ensure members are complying by it, protecting the local's assets and funds." *Id.* at 71:5-9. He testified that he passed the information he had received on to others who "could really do something about it; investigate it, check it out, make sanctions, or file additional charges." *Id.* at 83:6-10.

Plaintiff has no evidence to rebut this testimony or to demonstrate that Mr. Nelson actually sent the e-mail out of malice toward him. Plaintiff has no evidence that Mr. Nelson knew his statements were false or entertained any doubt as to their truth. Plaintiff states only that Mr. Nelson had "a vendetta against" him. Nelson Depo. at 122:9. This speculative, conclusory statement is inadequate to establish actual malice. *See Alfred A. Altimont, Inc. v. Chatelain, Samperton & Nolan*, 374 A.2d 284, 290 (D.C. 1977) ("speculation and innuendo" are not sufficient to show malice); *Blodgett*, 930 A.2d at 224 (holding that actual malice was not demonstrated where plaintiff merely "assert[ed] in conclusory fashion" that defendants acted in bad faith). Moreover, even accepting Plaintiff's assertion as true, the fact that Mr. Nelson

harbored ill will toward Plaintiff generally is insufficient as a matter of law to demonstrate that he acted with actual malice when he sent his e-mail. *See Columbia First Bank v. Ferguson*, 665 A.2d 650, 656 (D.C. 1995) (holding that "a showing of ill will toward the plaintiff" was insufficient to demonstrate actual malice); *Mosrie v. Trussell*, 467 A.2d 475, 477 (D.C. 1983) ("the mere existence of ill will on the part of the publisher toward the subject of the publication does not defeat the publisher's privilege if the privilege is otherwise established by the occasion and a proper purpose."); *Alfred A. Altimont*, 374 A.2d at 290 ("The fact that the publisher is inspired in part by resentment or indignation does not defeat the privilege").

Because the undisputed factual record demonstrates that Mr. Nelson's e-mail was protected by qualified privilege, and because there is no evidence that Mr. Nelson excessively published his e-mail or acted with malice, Defendants are entitled to summary judgment.

## B. False Statement

There is an additional reason why Plaintiff's lawsuit cannot survive the summary judgment stage. "[I]n a defamation case the plaintiff has the burden of proving that the challenged statements are . . . false." *Kendrick v. Fox Television*, 659 A.2d 814, 819 (D.C. 1995). In their Motion for Summary Judgment, Defendants argued that each of the statements in Mr. Nelson's e-mail were true or substantially true—that is, either Plaintiff had not established the "falsity" element of his defamation claim, or Defendants had established a "substantial truth" defense to that claim based on the undisputed factual record. Defendants cited to evidence in the record that supported their arguments with respect to each portion of Mr. Nelson's e-mail. In his Opposition, Plaintiff did not point to evidence in the record that would rebut these showings and

demonstrate that, in fact, the statements were false or not substantially true. Defendants are accordingly entitled to summary judgment.[5]

First, there are several statements in Mr. Nelson's e-mail that are simply not capable of being proven "false," and therefore cannot be the basis of Plaintiff's defamation claim. The Court does not understand Plaintiff to be arguing otherwise. That it was Mr. Nelson's recommendation that charges be brought against certain individuals, that Mr. Nelson thanked individuals for reporting information to him, and that Mr. Nelson was asking the recipients of the e-mail not to believe certain things, are not statements of fact that are capable of being proven "false." At the very least, Plaintiff has not presented any evidence that these statements were "false." They therefore cannot form the basis of Plaintiff's defamation claim.

Second, Defendants argue that the statement about Mr. Nelson "receiv[ing] a flood of telephone calls" over the Thanksgiving holiday about Plaintiff is true or substantially true. They point to Mr. Nelson's deposition testimony, where he confirmed that he, in fact, received such calls. *See* Nelson Depo. at 100:6-9.[6] Mr. Nelson testified that "five or six" individuals called him about this issue. *Id.* at 100:12. Mr. Nelson could recall the names of only two of those individuals, but his inability to remember the name of everyone who called him at his deposition (which occurred nearly three years after the fact) is insufficient to create a genuine dispute of material fact about the truthfulness of his statement that could defeat summary judgment.

---

[5] The Court need not, and therefore does not, reach Defendants' additional argument that the statements in Mr. Nelson's e-mail did not have a defamatory meaning because they did not lower Plaintiff's reputation in the eyes of the e-mail's recipients, given that those individuals already held such a poor impression of Plaintiff. *See* Defs.' Mot. at 11-14.

[6] In his Response to Defendants' Motion for Summary Judgment, Plaintiff implies that the deposition testimony of Mr. Nelson is not competent summary judgment evidence. This is incorrect. Defendants are entitled to rely on Mr. Nelson's deposition testimony at the summary judgment stage. If Plaintiff did not agree with what Mr. Nelson said at that deposition, it was incumbent on Plaintiff to present competent evidence to rebut Mr. Nelson's testimony.

Plaintiff presented no evidence that Mr. Nelson did not receive the calls as he claims, and indeed Plaintiff admitted at his deposition that he has no such evidence. *See* Wood Depo. at 67:12-15 ("Q: But I guess what I am asking you is whether you have any information to show that he did not receive phone calls from members claiming this? A: No."). To the extent Plaintiff suggests that "five or six" calls does not rise to the level of a "flood," this is not sufficiently "inaccurate" to constitute a "false" statement under District of Columbia law. It is not "false" to characterize five or six calls about a single union-related topic over the course of a federal holiday as a "flood." Plaintiff cannot survive summary judgment based on this type of quibble—so long as the "gist" of a statement is justified, "minor inaccuracies" are discounted. *Armstrong v. Thompson*, 80 A.3d 177, 183 (D.C. 2013).

Third, Defendants argue that the statement "[t]he trustee was on vacation during this time and she left a clear message for all of her locals to call me in her absence for all union business" is true. As evidence, they point to a November 24, 2015 automatic e-mail reply of the trustee during this period, Octavia Hall, which stated: "Unfortunately, I will be out of the office until Monday, November 30, 2015" and "[i]f you need any assistance, please contact Mr. Nate Nelson at [his phone number] or by e-mail at [his e-mail address]." *See* Defs.' Mot., Ex. 7. To the extent Plaintiff is claiming that this statement is untrue, he has presented no evidence to support that claim.

Fourth, Defendants argue that the statement that Mr. Nelson did not receive any phone calls from "the acting vice President or Carroll Wallace about permitting Duane Wood to perform shop steward duties" is true. As evidence, Defendants point to Mr. Nelson's deposition testimony, where he stated that he did not receive any such calls. *See* Nelson Depo. at 104. Plaintiff presented no evidence that would suggest that this statement was false and, in fact,

appears to have conceded at his deposition that it was true. Wood Depo. at 68-70 ("That sentence is true.").

Fifth, Defendants argue that Mr. Nelson's statement that "[a] federal arbitrator banned Duane Wood from holding any union office for 10 years and he must pay back the $1,600.00 before he can be a member" is true. As evidence, Defendants have presented the arbitration decision that states exactly this. *See* Defs.' Mot., Ex. 3, at 0011-25. In 2013, AFGE National President J. David Cox suspended Plaintiff from office and initiated disciplinary charges against him for alleged financial improprieties and for allegedly leading a campaign to decertify Local 2798. *Id.* at 0013; *see also* Defs.' Mot., Ex. 6, at 014. These charges were ultimately upheld by an arbitrator who held that "Wood shall be removed from office immediately," "Wood shall make restitution to Local 2798 of the American Federation of Government Employees, AFL-CIO in the amount of $1,600," "Wood shall be expelled from membership in the American Federation of Government Employees, AFL-CIO, effective immediately, and shall not be eligible for reinstatement for five years from the date of this decision and until he had paid the restitution ordered," and "Wood shall be barred from holding office in the Union for a period of ten years from the date of this decision." Defs.' Mot., Ex. 3, at 0023-24. Plaintiff is clearly aggrieved by the outcome of this arbitration, but that is not relevant to this lawsuit. What is relevant is that Plaintiff has not presented evidence that would suggest that Mr. Nelson's statement in his e-mail about the arbitrator's decision was false.

Sixth, Defendants argue that the statement that "Members reported" to Mr. Nelson that Plaintiff "was permitted to go in the union office (with his feet on top of a desk) and pass out union information to the members" is true. As evidence, Defendants point to Plaintiff's own written statement that he went to the union office in November 2015. *See* Defs.' Mot., Ex. 4, at

0045.  In addition, Mr. Nelson testified at his deposition that a union member told him that he

had seen Plaintiff with "his feet up on the desk" in the office, Nelson Depo. at 101:1-17, 125:5-7,

and additional evidence indicates that union members had complained that Plaintiff "continue[d]

to be involved in union business" after he had been expelled, by disseminating information about

the union to members, Defs.' Mot., Ex. 4, at 0032-36.  The Court discerns from Plaintiff's

Response to Defendants' Motion for Summary Judgment, and the documents attached thereto,

that Plaintiff disputes whether he in fact put his feet on top of a desk in the union office.  *See,*

*e.g.*, Pl.'s Resp. at 23.  Plaintiff has submitted an e-mail from a Gwendolyn Whatley, which

states that Plaintiff had not "sat behind any desk in this office and put his feet up."  *See* Pl.'s Exs.

at 60 (marked 035).  Even considering Ms. Whatley's e-mail, Plaintiff has not demonstrated a

genuine dispute of fact with respect to this statement's falsity.  That Ms. Whatley had not seen

Plaintiff with his feet on the top of a desk simply does not mean that Mr. Nelson's statement—

that it was reported to him that Plaintiff was seen with his feet on a desk—was false.  The record

indicates that this was in fact reported to Mr. Nelson by someone other than Ms. Whatley.  Ms.

Whatley's e-mail does not rebut that.

Seventh, Defendants argue that the statement that "Both Carroll Wallace and the acting

Vice president knew Duane Wood was banned from union activities because they both

participated with Duane Wood for the purpose of attempting to decertify local 2798" is true.  As

evidence, Defendants have presented the Court with documents that show that the arbitration

decision banning Plaintiff from union activities, cited above, was provided to Ms. Wallace.

Defs.' Mot., Ex. 4, at 0028.  The arbitrator found that Plaintiff had presented members of the

union with a "decertification petition," and noted testimony that Ms. Wallace had been involved

with the "activities to decertify."  *See* Defs.' Mot., Ex. 3, at 0021-22.  At his deposition, Plaintiff

conceded that both Ms. Wallace and the acting Vice President, Ms. Whatley, knew that Plaintiff had been banned. *See* Wood Depo. at 70:10-22. Plaintiff presented no evidence that would show that this statement in Mr. Nelson's e-mail was false.

Eighth, Defendants argue that Mr. Nelson's statements that "[i]t was reported that Mr. Wood was permitted to destroy all of the negative information pertaining to him that were stored in the union office" and that he "used his IT ability to erase the arbitration decision from certain computers and block access to other computers" are true. Mr. Nelson testified at his deposition that these things were reported to him, and that he believed them to be true. *See* Nelson Depo. at 109-11. Plaintiff has presented no evidence to the contrary. Plaintiff references an e-mail from an individual named David Jones which states that "as far as I'm [Mr. Jones] concerned, you're clear." Pls.' Exs. at 62 (marked 037). It is not at all clear from this e-mail who Mr. Jones is or what Mr. Jones was stating that Plaintiff was "clear" from. Regardless, Mr. Jones' opinion that Plaintiff is "clear" simply does not demonstrate that Mr. Nelson's statements—that various things about Plaintiff were reported to him—were false.

Ninth, Defendants argue that the statement that Mr. Nelson had "a copy of the arbitration decision that [he] had saved on a flash drive" is true. Mr. Nelson testified at his deposition that he in fact saved the decision to a flash drive. *See* Nelson Depo. at 111:17-22. Plaintiff has presented no evidence that this is not true.

Tenth, Defendants argue that the statement that Mr. Nelson had "forwarded a copy of [the arbitration] decision to Trustee Octavia Hall and NVP Bunn" is true. Mr. Nelson testified at his deposition that he did so. *See* Nelson Depo. at 112:9-12. Plaintiff has presented no evidence that this is not true.

Eleventh, Defendants argue that Mr. Nelson's statement that "[m]embers further told [him] that Duane Wood and Carroll Wallace primary goal was to raid the bank account of local 2798 because they knew local 2798 had a lot of money" was true. Mr. Nelson testified that this was the case at his deposition. *See* Nelson Depo. at 112:16-113:5. Plaintiff has presented no evidence that this is false. In response to an interrogatory, Plaintiff indicated his belief that it "is unreasonable to believe" members would have reported this to Mr. Nelson, Defs.' Mot., Ex. 8, but this subjective belief is not sufficient to create a genuine dispute of fact that could prevent summary judgment.

Finally, Defendants argue that the statements in the subject line and body of the e-mail that refer to Plaintiff and his associates as "gang members" and a "gang of crooks," who will not receive "early Christmas bonus[es]" because "they have proven that they can't be trusted with the check book or credit card," are true, substantially true or, at most, protected hyperbole. The Court agrees. As an initial matter, it is not clear how the assertion that Plaintiff would not be given an "early Christmas bonus" could be proven true or false. Plaintiff certainly has not presented any evidence that this was false.

The reference to Plaintiff being a member of a gang of crooks who cannot be trusted, Defendants argue, is true because Plaintiff was found by an arbitrator, as discussed above, to have made improper withdrawals of cash from union bank accounts and was accordingly banned from the union and ordered to pay restitution. *See* Defs.' Mot., Ex. 3 at 0018, 23, 24. Defendants also argue that, to the extent these statements impute criminality to Plaintiff, they are accurate because Plaintiff had been convicted of a crime and spent time in jail in 2011. *See* Nelson Depo. at 113:18-22; Defs.' Mot., Ex. 3, at 0001-2 (Plaintiff's conviction); Wood Depo. at 91-92 (admitting that he had spent time in jail, pled guilty to a crime and was on probation for a

year).  In addition, Defendants have presented evidence that another AFGE officer who had worked alongside Plaintiff—who Nelson was referencing in his e-mail—had recently pled guilty to theft and embezzlement.  *See* Defs.' Mot., Exs. 4, 5.  This evidence provides a factual basis for Mr. Nelson's statements, and Plaintiff has not presented evidence rebutting these facts.[7]

At most, the Court concludes that Mr. Nelson's use of the words "gang member" and "crook" to describe Plaintiff was non-actionable hyperbole.  "Whether a defamatory statement of opinion is actionable often depends on the context of the statement in question."  *Competitive Enter. Inst. v. Mann*, 150 A.3d 1213, 1241 (D.C. 2016).  "Rhetorical hyperbole," which would not reasonably be understood in context as being fully and literally true, is not actionable.  *Id.* Viewed in context, Mr. Nelson's words would be understood as referring to the financial impropriety and criminal history discussed above—not to mean that Plaintiff was literally a "gang member."  *See Old Dominion Branch No. 496, Nat. Ass'n of Letter Carriers, AFL-CIO v. Austin*, 418 U.S. 264, 284 (1974) (holding that words such as "traitor" or "fascist" "used . . . in a loose, figurative sense to demonstrate the union's strong disagreement with the views of those workers who oppose unionization" was not actionable as defamation).

In sum, Plaintiff has not identified any genuine disputes of fact with respect to whether or not Mr. Nelson's statements were false.  Defendants have presented evidence that all of those statements were true or at least substantially true.  Because falsity is a required element of Plaintiff's defamation claim, Plaintiff cannot succeed.  Defendants are entitled to judgment as a matter of law.

---

[7] Plaintiff states that he "was never involved nor a party to any Federal case against Ms. Correa." *See* Pl.'s Resp. at 9.  Plaintiff's involvement, or lack thereof, with the criminal action brought against Ms. Correa is irrelevant to whether the existence of that action rendered Mr. Nelson's statement accurate.

**IV. CONCLUSION**

For the reasons set forth above, the Court will GRANT Defendants' Motion for Summary Judgment. There are no genuine disputes of material fact with respect to the falsity of any statement in Mr. Nelson's e-mail, nor with respect to the applicability of qualified privilege to the contents of that e-mail, and Defendants are entitled to judgment as a matter of law. This case is DISMISSED. An appropriate Order accompanies this Memorandum Opinion.[8]

Dated: June 22, 2018

                                       /s/                        
COLLEEN KOLLAR-KOTELLY
United States District Judge

---

[8] Plaintiff's Response to Defendants' Motion for Summary Judgment states that "Plaintiff expressly incorporates by reference his own Motion for Summary Judgment and exhibits thereto." Pl.'s Resp. at 1. To the extent this statement is meant to signify that Plaintiff intends to move for summary judgment, that motion is DENIED for all of the reasons described in this Memorandum Opinion.